**STATE of Utah, Plaintiff and Appellee,**

v.

**Aaron D. OLSEN, Defendant and Appellant.**

**No. 900483.**

Supreme Court of Utah.

Sept. 16, 1993.

R. Paul Van Dam, Atty. Gen., J. Kevin Murphy, Asst. Atty. Gen., Salt Lake City, for plaintiff.

Stephen R. McCaughey, G. Fred Metos, Salt Lake City, for defendant.

ZIMMERMAN, Justice:

Aaron D. Olsen appeals his 1990 jury conviction for aggravated robbery, a first degree felony, under Utah Code Ann. § 76-6-302. Olsen raises four claims of error: (i) the trial court's failure to excuse a potential juror for cause; (ii) ineffective assistance of counsel for failure to challenge a potential juror for cause; (iii) improper admission of eyewitness identification evidence; and (iv) improper admission of hearsay evidence. Because we find Olsen's claims to be without merit, we affirm.

The facts are largely undisputed. On the evening of June 28, 1990, J.C. Mouille, a United Parcel Service ("UPS") driver, was robbed by a single gunman at the Ogden UPS Center. The gunman escaped with UPS bags containing more than $16,-000 in cash. Mouille described the gunman as approximately 5 feet 4 inches tall and blonde.

About four days after the robbery, a plastic garbage bag containing UPS receipts and money pouches taken in the rob-

bery was found near the Provo post office. The stolen cash was gone. However, UPS investigators found a business card in the name of Lee Levitt in the bag. A handwritten note to someone named Troy was on the card. The police located Levitt, who told them that the Troy referred to in the note was Troy Powell, her roommate's boyfriend. Levitt also told police that Powell had a friend named Cary Nichols who worked for UPS. When the police asked if either Powell or Nichols had a blonde friend, Levitt mentioned Aaron Olsen. Olsen's fingerprint was later found on the business card recovered from the robbery.

The police subsequently arrested Powell, Nichols, and Olsen and charged them with conspiracy to commit aggravated robbery and aggravated robbery. In a lineup, Mouille, the UPS driver, identified Olsen and another individual as possibly being the gunman. After closer scrutiny, Mouille said that if he had to choose one of the two as the gunman, he would choose Olsen. At the preliminary hearing, Mouille positively identified Olsen as the armed robber.

Olsen was tried separately on the charges. Following the presentation of evidence, the trial court dismissed the conspiracy charge. A jury, however, found Olsen guilty of aggravated robbery. He now appeals.

Olsen's first claim is that the trial court committed plain error in failing to dismiss a potential juror, Scott K. Hodge, for cause. Olsen asserts that during voir dire, Hodge expressed a bias in favor of police officers. Despite this alleged bias, the trial judge did not dismiss Hodge for cause, nor did defense counsel challenge Hodge for cause. Hodge was removed only when defense counsel exercised a peremptory challenge.

■ Because defense counsel failed to object to the trial court's failure to dismiss Hodge for cause, Olsen is entitled to appellate review only if he can show that the trial court committed "plain error."[1]

---

1. We note that in some circumstances, a claim of error may also be reviewed despite the lack of objection at the trial level if "exceptional circumstances" exist. *State v. Dunn*, 850 P.2d 1201, 1209 n. 3 (Utah 1993); *see Jolivet v. Cook*, 784 P.2d 1148, 1151 (Utah 1989), *cert. denied*, 493 U.S. 1033, 110 S.Ct. 751, 107 L.Ed.2d 767 (1990); *State v. Gibbons*, 740 P.2d 1309, 1311

*State v. Eldredge*, 773 P.2d 29, 35 (Utah), *cert. denied*, 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 29 (1989); *State v. Verde*, 770 P.2d 116, 121 (Utah 1989); *State v. Ellifritz*, 835 P.2d 170, 174 (Utah Ct.App.1992). To constitute plain error, three elements must be established: (i) an error did in fact occur; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful. *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993); *see Verde*, 770 P.2d at 122. If any one of these elements is missing, there can be no finding of plain error. *Dunn*, 850 P.2d at 1209.

■ We first decide whether an error occurred. In reviewing whether a trial court committed error in not dismissing a juror during voir dire, we apply an abuse of discretion standard. *State v. Gotschall*, 782 P.2d 459, 462 (Utah 1989); *State v. Moton*, 749 P.2d 639, 643 (Utah 1988); *State v. Hewitt*, 689 P.2d 22, 26 (Utah 1984); *State v. Lacey*, 665 P.2d 1311, 1312 (Utah 1983); *Jenkins v. Parrish*, 627 P.2d 533, 536 (Utah 1981). In other words, we will find error only if the trial court's decision was "beyond the limits of reasonability." *State v. Hamilton*, 827 P.2d 232, 239–40 (Utah 1992).

Rule 18(e)(14) of the Utah Rules of Criminal Procedure allows a party to challenge a prospective juror for cause when "a state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging [the juror]." Utah R.Crim.P. 18(e)(14). This court has defined "impartiality" as "a mental attitude of appropriate indifference." *State v. Bishop*, 753 P.2d 439, 451 (Utah 1988); *see State v. Cobb*, 774 P.2d 1123, 1126 (Utah 1989). For example, we have found impartiality when a prospective juror "unequivocally stated he would look at the facts of the case impartially" despite his friendship with police officers and his acquaintance with one detective on the case. *Hewitt*, 689 P.2d at 26. With this standard in mind, we turn to the present case to

(Utah 1987). However, exceptional circum-

determine whether the prospective juror was removable for cause.

■ When Hodge was asked by counsel if he thought police officers were more believable than other witnesses, he stated that he had previously worked with police officers and believed they were trained observers. After further probing, Hodge stated, "I'm just saying I think they—they've trained themselves to where they—they're more likely to give the full view of ... what's happened where somebody else that's not trained might miss something." Additional questioning was conducted by the court:

> [The Court]: Would you be more inclined—setting aside the—the training aspect because that's something you can consider in determining whether ... he's right or wrong, but considering the police officer as a person, would you be more inclined to believe or think that a police officer would be more inclined to tell the truth or more inclined to be right just by reason of the fact he's a police officer?
>
> . . . .
>
> Mr. Hodge: (Shakes head from side to side)
>
> The Court: I guess—I guess what I'm asking is, can you be neutral? Can you sit there and assume that you're not going to take one side or the other side whether there's police involved or police not involved? Can you be neutral? Can you sit there and fairly judge the police officer as a person in determining whether he's correct or incorrect?
>
> . . . .
>
> Mr. Hodge: I think I can be neutral.

After reviewing the voir dire, we cannot say that Hodge exhibited such actual bias as to prevent him from acting impartially. Hodge's belief that police officers are trained to give a more detailed account of events does not indicate that he would be more likely to believe a police officer over any other witness. Furthermore, even if his statement facially raised the issue of impartiality, subsequent questioning by the

stances are not present here.

court showed that Hodge could be an impartial juror.

Defendant asserts that Hodge's reply regarding his neutrality was similar to the "reluctant disclaimer" we found questionable in *State v. Brooks*, 631 P.2d 878, 882–84 (Utah 1981). However, *Brooks* dealt with potential jurors who had been victims of crimes and who had strong and deep impressions from those acts. *Id.* at 884. Under those circumstances, we agreed that a response indicating the ability to be impartial was questionable. *Id.* In the instant case, however, Hodge's statements indicate only that he thought police officers were trained to perceive events in greater detail. There was no evidence suggesting that his impartiality was questionable. We cannot say that the trial court abused its discretion in not dismissing Hodge for cause and therefore find no merit to the claim of plain error.

Olsen next claims that he was denied effective assistance of counsel because his attorney failed to challenge Hodge for cause. However, absent a showing of error, there can be no showing of the prejudice necessary to establish ineffective assistance of counsel. *Verde*, 770 P.2d at 118–19; *cf. State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (citing *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069–70, 80 L.Ed.2d 674 (1984)). Because we have found that the trial judge did not err in failing to dismiss Hodge for cause, we cannot find that defense counsel was ineffective in failing to raise the challenge. Olsen's ineffectiveness claim must therefore fail.

■ Olsen also asserts that the trial court violated his due process rights by allowing eyewitness identification testimony which was not supported by proper foundation or which had not been presented in an evidentiary hearing. *See State v. Ramirez*, 817 P.2d 774, 778 (Utah 1991). The State asserts that this claim was not properly preserved for appeal because defendant failed to object on constitutional grounds when the trial court admitted the eyewitness identification evidence. We agree. As we have repeatedly held, failure

to object constitutes waiver of the objection. *See* Utah R.Crim.P. 12(d); *State v. DeMille*, 756 P.2d 81, 83 (Utah 1988); *State v. Miller*, 674 P.2d 130, 131 (Utah 1983).

We now turn to Olsen's final contention, in which he asserts that the trial court improperly admitted several hearsay statements allegedly made by co-conspirators Nichols and Powell. First, Olsen argues that the trial court improperly admitted the testimony of two UPS employees as to statements Nichols made approximately six weeks before the robbery. One employee testified that after being seen with Powell at the Ogden facility, Nichols, a UPS employee, stated that he was training Powell. Powell, however, had never been employed by UPS. A second UPS employee testified that Nichols said that he was at the Ogden facility to do an audit, an explanation that the employee found peculiar because of the late hour of the day. Olsen also challenges the admissibility of statements Nichols made to a third UPS employee, Janet Terry, who testified that Nichols made unusual inquiries about the amount of money or "working funds" in the safe located at the West Valley UPS Center.

■ The State argues that the statements were properly allowed because they were not hearsay, i.e., they were not offered to prove the truth of the matter asserted. Rule 801(c) of the Utah Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Utah R.Evid. 801(c). However, if an out-of-court statement is "offered simply to prove that it was made, without regard to whether it is true, such testimony is not proscribed by the hearsay rule." *State v. Sorensen*, 617 P.2d 333, 337 (Utah 1980); *cf. State v. Collier*, 736 P.2d 231, 234 (Utah 1987); *Durfey v. Board of Educ.*, 604 P.2d 480, 485 (Utah 1979). To the extent that there is no pertinent factual dispute, whether a statement is offered for the truth of the matter asserted is a question of law, to be reviewed under a correction of error standard. *See Hansen v. Heath*, 852 P.2d 977, 979 (Utah 1993); *Ra-*

*mirez,* 817 P.2d at 781 n. 3; *Provo City v. Warden,* 844 P.2d 360, 365 (Utah Ct.App. 1992).

 We conclude that the court correctly allowed the testimony of the UPS employees because the statements allegedly made by Nichols were offered for purposes other than to prove the truth of the matter asserted. The testimony was introduced to prove that the statements and inquiries were in fact made. It was also admitted to show that Nichols and Powell were at the site of the robbery under unusual circumstances and that Nichols acted in an unusual manner prior to the robbery. Therefore, these statements were not hearsay and were properly admitted at trial.

Olsen also challenges the admission of statements Nichols and Powell made to witnesses Lee Levitt and Shannon Fairbanks after the robbery. Levitt and Fairbanks testified that they had asked Nichols' and Powell's advice as to what they should tell the police if they were questioned about the robbery. Nichols and Powell reportedly told the two to tell the truth: that they knew Nichols and Powell but knew nothing of the robbery. Levitt and Fairbanks also testified that Nichols and Powell instructed them not to mention their trips to Ogden to the police. Additionally, they testified to Nichols' and Powell's discussions of avoiding the police and leaving the country.

We find that the admission of these statements was not objected to at trial, and therefore, defendant's claims of error were not properly preserved for appeal. We have repeatedly held that "[a] party who fails to make a clear and timely objection waives the right to raise the issue at the appellate level." *State v. Matsamas,* 808 P.2d 1048, 1052 (Utah 1991); *see* Utah R.Evid. 103(a)(1); *State v. Seale,* 853 P.2d 862, 876 n. 9 (Utah 1993); *State v. Emmett,* 839 P.2d 781, 785 (Utah 1992); *Eldredge,* 773 P.2d at 34–35.

On the basis of our review of the record, we find that Olsen's claims are without merit. Accordingly, we affirm his conviction for aggravated robbery.

HALL, C.J., HOWE, Associate C.J., and DURHAM, J., concur.

STEWART, J., concurs in the result.