2000 Utah Ct. App. 244

**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Roger J. ALIRES, Defendant and Appellant.**

No. 990483–CA.

Court of Appeals of Utah.

Aug. 10, 2000.

770

Kristen R. Angelos, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

T. Langdon Fisher, Salt Lake City Prosecutor's Office, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and BILLINGS, and ORME, J.J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant appeals from a conviction of telephone harassment, a class B misdemeanor in violation of Salt Lake City Code § 11.08.030. Defendant claims that the trial court improperly admitted prior bad act evidence, that admission of hearsay testimony violated both the federal and state Constitutions' Confrontation Clauses, and that the court erred in ruling that statements made during a telephone call were not hearsay. We affirm.

## BACKGROUND

¶ 2 On July 19, 1998, at approximately 10:40 p.m., Officer Gilbert Salazar arrived at Tiffany Brimhall's Salt Lake City apartment. As Officer Salazar walked around the apartment building, he encountered defendant banging on a window at the back of the building. Defendant told the officer that he lived in the apartment, that his baby and girlfriend were inside, and that he was trying to get into the apartment. Officer Salazar went inside the apartment to determine whether defendant in fact lived there and spoke with Brimhall, who was in the apartment with her infant daughter. Brimhall told the officer that defendant did not live at the apartment and that she wanted him to leave. The officer retrieved some of defendant's belongings from the apartment and told him to leave, but did not arrest defendant.

¶ 3 Later that evening, at approximately 11:47 p.m., Officer Jill Candland was dispatched to the same apartment in response to a 911 call from Brimhall. Officer Candland testified that Brimhall was very upset, nervous, tearful, and shaky when the officer first contacted her. Brimhall told Officer Candland about the earlier incident involving defendant, that defendant had called her on the telephone and threatened to harm her with a knife, and that she didn't understand how he could call her as he'd been taken to jail earlier in the evening. Brimhall also explained to the officer that she and defendant had a romantic relationship in the past and that they had a child together.

¶ 4 While Officer Candland was at Brimhall's apartment, the phone rang. Brimhall answered the phone, and then mouthed the words "That's him" and "It's him" to Officer Candland. Brimhall held the receiver out and moved towards Officer Candland so that both women could hear the phone conversation. The caller asked Brimhall why she had called the police, told her that he wanted to be with her and their daughter, and that if she did not take him back he would kill her. The caller repeated this threat three times and then told Brimhall that she needed to watch the daycare.

¶ 5 At this point, Officer Candland took the phone and stated: "Mr. Alires, this is Officer Candland with the Salt Lake City Police Department, you've made a serious mistake making this threat on the phone." The caller yelled a profanity into the phone and hung up. At trial, Officer Candland testified that she had met defendant once previously in 1989 but did not recognize his voice on the phone and that she believed it was defendant's voice based solely on Brimhall's assertion. Police later determined that the call was placed from a pay phone.

¶ 6 Defendant was charged with domestic violence telephone harassment. Brimhall later filed a notarized letter with the court

indicating that she did not wish to file charges against defendant and wanted the charges dropped or dismissed. Nonetheless, defendant was tried by jury on February 22, 1998. Brimhall did not appear as a witness at trial. At the conclusion of the trial, the jury found defendant guilty as charged. Defendant now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Defendant raises three issues on appeal. First, defendant claims that the trial court erred in admitting testimony regarding defendant's earlier appearance and disturbance at Brimhall's apartment. We review a trial court's decision to admit evidence of prior crimes or bad acts under Utah Rules of Evidence 403 and 404(b) for an abuse of discretion. *See State v. Nelson–Waggoner,* 2000 UT 59,¶ 16, 399 Utah Adv. Rep. 22; *State v. Decorso,* 1999 UT 57,¶ 18, 993 P.2d 837, *cert. denied,* — U.S. —, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2000).

¶ 8 Second, defendant asserts that the trial court erroneously admitted Brimhall's statements under the excited utterance exception to the hearsay rule in violation of defendant's right to confront witnesses against him. We review the trial court's legal conclusions for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

¶ 9 Finally, defendant challenges the trial court's ruling that the caller's statements that Officer Candland heard over the telephone were admissible as non-hearsay. "To the extent that there is no pertinent factual dispute, whether a statement is offered for the truth of the matter asserted is a question of law, to be reviewed under a correction of error standard." *State v. Olsen,* 860 P.2d 332, 335 (Utah 1993).

## ANALYSIS

### Prior Bad Act Evidence

¶ 10 Defendant argues that the trial court erred in admitting evidence of his earlier appearance and disturbance at the victim's apartment. Defendant asserts that this evidence was not properly offered for identification purposes because there was no similar pattern or common scheme between this earlier incident and the charged offense, hence, it was offered only as evidence of defendant's bad character. Under Rule 404(b) of the Utah Rules of Evidence,

[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. In other words, evidence offered under this rule is admissible if it is relevant for a non-character purpose and meets the requirements of Rules 402 and 403.

Utah R. Evid. 404(b); *see State v. Decorso,* 1999 UT 57,¶ 20, 993 P.2d 837, *cert. denied,* — U.S. —, 120 S.Ct. 1181, 145 L.Ed.2d 1088 (2000). As such, the trial court properly admitted evidence of defendant's earlier disturbance if it was offered for identification purposes rather than as character evidence, it was relevant, and it was not unfairly prejudicial.

¶ 11 The State contends it offered evidence of defendant's prior disturbance to prove the identity of the caller. Identity of the caller was clearly at issue in this case. Defendant denied making the threatening phone call during trial and pleaded not guilty, thus placing his identity in question. *See State v. Teuscher,* 883 P.2d 922, 927 (Utah Ct.App. 1994). However, defendant asserts that the challenged evidence here does not identify him as the threatening caller because there is no common plan or scheme connecting the two incidents. Defendant claims that evidence of the earlier incident would identify him as the caller only if it was shown that he always tried to break into his victims' homes before making threatening phone calls.

¶ 12 Evidence of a common plan or scheme is often offered to prove identity under Rule 404(b). *See State v. Featherson,* 781 P.2d 424, 428–30 (Utah 1989); *see also Decorso,* 993 P.2d 837, 1999 UT 57 at ¶ 27 (explaining identification evidence from subsequent failed robbery properly admitted for identification purposes due to numerous similarities between charged crime and subsequent

crime, including type of store, timing, way perpetrator approached clerks, and implements carried in both incidents); *State v. Johnson*, 748 P.2d 1069, 1075 (Utah 1987) (holding that other crime evidence was "directly probative on the issue of identity and was indirectly probative on the identity issue because it indicated that a common scheme was employed by the perpetrator of the crimes in using the same name on the forged checks, both of which were cashed the same day").

¶ 13 Although defendant correctly asserts that prior cases have determined that evidence of a common plan or scheme is admissible for identification purposes under Rule 404(b), no authority has been brought to our attention holding that a common plan or scheme is always required. In this case, the facts clearly link the two incidents and tend to identify defendant as the caller. Defendant's visit and disturbance at Brimhall's home happened only one hour before she received the threatening phone call overheard by Officer Candland. Police officers told defendant to leave Brimhall's apartment. The threatening phone call included statements regarding Brimhall's involvement of the police. The caller also discussed his relationship with Brimhall and "their daughter," just as defendant had earlier done when speaking with Officer Salazar. Further, both incidents consisted of defendant's angry and aggressive behavior directed at Brimhall. These facts suggest a clear factual link between the two incidents, a course of threatening behavior directed at Brimhall. As such, the trial court did not abuse its discretion in finding that the prior bad act evidence at issue was properly offered for identification purposes rather than to show defendant's bad character.

■ ¶ 14 The trial court also correctly determined that this evidence was relevant. Under Rule 402 of the Utah Rules of Evidence all relevant evidence is admissible, but "unless the other crimes evidence tends to prove some fact that is material to the crime charged—other than the defendant's propensity to commit crime—it is irrelevant and should be excluded by the court pursuant to

rule 402." *Decorso*, 993 P.2d 837, 1999 UT 57 at ¶ 22.

¶ 15 In this case, evidence of the earlier incident was admitted by the trial court to identify defendant as the person who made the threatening phone call. The identity of the caller is a material fact and a necessary element in the State's prosecution. Further, as discussed above, the phone call included mention of the earlier police involvement. As such, evidence of defendant's prior disturbance at the apartment meets relevance requirements as it tends to prove the identity of the caller.

■ ¶ 16 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Utah R. Evid. 403. Defendant asserts that even if this evidence was properly offered to show identity and meets relevancy requirements it was unfairly prejudicial.

> "In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility."

*State v. Shickles*, 760 P.2d 291, 295–96 (Utah 1988) (quoting E. Cleary, *McCormick on Evidence* § 190, at 565 (3d ed.1984)).

¶ 17 Consideration of these factors indicates that the prior bad act evidence admitted in this case was not unfairly prejudicial. Defendant's identity as the threatening caller is a necessary element of the charged offense. Because identity was a crucial issue at trial, this evidence was very important to the State's case. The earlier incident happened just one hour before the threatening phone call. Both incidents involved angry behavior directed at the same victim. Further, the earlier incident was not one that

would likely cause a jury to become overly hostile to defendant. Though defendant was at the residence and caused a disturbance, he did not attempt to assault Brimhall, and his behavior did not result in arrest. Therefore, we conclude that the trial court did not abuse its discretion in admitting evidence of defendant's earlier disturbance for identification purposes.

### Excited Utterances and Confrontation Clause

■ ¶ 18 Defendant asserts that the trial court erroneously admitted Brimhall's statements under the excited utterance exception to the hearsay rule through the testimony of Officer Candland because Brimhall did not appear as a witness and was not subject to cross-examination. Defendant challenges the admission of these statements under both federal and state Confrontation Clause provisions.[1]

¶ 19 Before making the statement at issue, Brimhall told Officer Candland about defendant's earlier disturbance and explained that after leaving he called her on the telephone and threatened her. While the officer was speaking to Brimhall, the phone rang. The statement at issue was made by Brimhall in Officer Candland's presence upon answering the telephone. Brimhall answered the phone, then stated, "That's him, It's him," to Officer Candland. The trial court determined that Brimhall's statement was admissible under the excited utterance exception to the hearsay rule. Defendant does not challenge the trial court's ruling that Brimhall's

statement was an excited utterance.[2] Instead, defendant argues that admission of Brimhall's statement through Officer Candland's testimony violated the federal and state Confrontation Clauses because Brimhall was not subject to cross-examination and was not an unavailable witness.

¶ 20 We conclude that under the federal Constitution *White v. Illinois*, 502 U.S. 346, 348–49, 112 S.Ct. 736, 739, 116 L.Ed.2d 848 (1992), is controlling. In *White*, the United States Supreme Court considered whether the Confrontation Clause of the Sixth Amendment requires the State to produce a hearsay declarant at trial or show that the declarant is unavailable before a trial court admits testimony falling under the excited utterance exception. The *White* Court ultimately held that the unavailability analysis was not a necessary part of a Confrontation Clause inquiry when statements are admitted under this exception. *See id.* at 354, 112 S.Ct. 736 at 741. The Court explained that the excited utterance exception was "firmly rooted" and that statements falling under it are "made in contexts that provide substantial guarantees of their trustworthiness." *Id.* at 355, 112 S.Ct. 736 at 742. In so ruling, the *White* Court limited the holding of *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980),[3] explaining that "*Roberts* stands for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the

---

1. The Sixth Amendment to the United States Constitution states that "the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Utah Constitution contains a similar provision, stating that "[i]n criminal prosecutions the accused shall have the right ... to be confronted by the witnesses against him." Utah Const. art. I, § 12.

2. Rule 803(2) of the Utah Rules of Evidence defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Excited utterances are admitted as an exception to the rule against hearsay under the theory that "the stress and excitement of the event suppress the declarant's ability to reflect or calculate self interest in a manner that would produce a lie."

*West Valley City v. Hutto*, 2000 UT App 188, ¶ 12, 398 Utah Adv. Rep. 3, 5 P.3d 1. In this case, the trial court correctly determined that the excited utterance exception applied as Brimhall made the statement directly after answering the phone while under the stress of receiving the threatening call.

3. The *Roberts* Court held that in order to admit hearsay statements at trial when the hearsay declarant is not present for cross-examination, the State must show that the declarant is unavailable, and that the statement at issue " 'bears adequate indicia of reliability.' " *State v. Menzies*, 889 P.2d 393, 402 (Utah 1994), *cert. denied*, 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)).

course of a prior judicial proceeding." *White* 502 U.S. at 354, 112 S.Ct. 736 at 741.

¶ 21 *White* involves analysis of the same hearsay exception at issue here and clearly states that unavailability is not required. Defendant does not distinguish *White*. Instead, the basis of defendant's federal Confrontation Clause argument is that Utah courts have implicitly rejected the *White* analysis and have continued to require unavailability. This argument is problematic, given that under the Supremacy Clause the United States Supreme Court has the final word on the federal Constitution and state supreme courts may not interpret it differently. However, because we do not read the cases cited by defendant as purporting to announce a different rule we need not face that problem. Defendant relies on *State v. Carter*, 888 P.2d 629 (Utah 1995), *cert. denied*, 516 U.S. 858, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995), *State v. Menzies*, 889 P.2d 393 (Utah 1994), *cert. denied*, 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995), and *State v. Moosman*, 794 P.2d 474 (Utah 1990). Review of these decisions indicates that defendant's reliance is misplaced.

¶ 22 In *Carter*, the Utah Supreme Court held that a transcript of witness testimony at a 1985 sentencing hearing was properly admitted during defendant's 1992 sentencing hearing. *See* 888 P.2d at 647. The *Carter* court analyzed defendant's Confrontation Clause challenge under previous Utah precedent following the rule enunciated in *Roberts*, explaining that the transcript was admissible because the witness was unavailable and the testimony was sufficiently reliable. *See id.* at 646–47. However, the evidence at issue in *Carter* consisted of "out-of-court statements ... made in the course of a prior judicial proceeding," *White*, 502 U.S. at 354, 112 S.Ct. 736 at 741, precisely the type of statements to which the United Supreme Court limited *Roberts'* holding in *White*. As such, this case does not stand for the proposition

that Utah courts have rejected the precedent set by *White*.

¶ 23 Similarly, in *Menzies*, the Utah Supreme Court evaluated whether the admission of preliminary hearing testimony of a witness who refused to testify at trial violated the Confrontation Clause. *See* 889 P.2d at 402. The court analyzed defendant's claim under the test set forth in *Roberts* requiring unavailability. *See id.* However, as in *Carter*, the evidence at issue consisted of statements made in a prior judicial proceeding, statements which the *White* Court indicated must satisfy the *Roberts* test. *See White*, 502 U.S. at 354, 112 S.Ct. 736 at 741.

¶ 24 In *Moosman*, the Utah Supreme Court considered whether the defendant's right to confront witnesses against him was violated when the trial court allowed hearsay testimony of the doctor who supervised an autopsy rather than requiring the doctor who performed the autopsy to testify. *See* 794 P.2d at 479. The *Moosman* court did not evaluate admission of the hearsay testimony under the *Roberts* framework, instead fashioning a different analysis.[4] The decision neither discusses nor turns on unavailability. Most importantly, *Moosman* was decided prior to the *White* decision, and therefore cannot stand as authority ignoring that decision. Accordingly, we conclude that defendant's federal Confrontation Clause challenge fails.

¶ 25 Defendant urges us to interpret the Utah Constitution Confrontation Clause to require unavailability before admitting an excited utterance. Having examined defendant's arguments, we are not persuaded that there should be a different standard under Utah's Confrontation Clause. By their very nature, excited utterances are more likely to be reliable expressions of what occurred at the time they were made than testimony given after reflection. "A statement that has been offered in a moment of excitement— without the opportunity to reflect on the

---

4. The *Moosman* court evaluated the hearsay testimony under a two-part test:

First, we look at whether the State's presentation of hearsay testimony of extrajudicial statements or occurrences is "crucial" to the State's case or "devastating" to the defendant.

Second, we look at the availability of the declarant and whether the presence of the declarant will add any probative value to the evidence by allowing the trier of fact to observe the demeanor of the witness. *Id.* at 480.

consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom." *White,* 502 U.S. at 356, 112 S.Ct. 736 at 742–43. Therefore, we conclude that defendant's state Confrontation Clause challenge also fails.

### Statements of Caller

¶ 26 Defendant claims that the trial court erred in admitting as non-hearsay threatening statements allegedly made by defendant during the telephone call. Defendant specifically objects to statements asserting that if Brimhall did not take him back he would kill her and that she needed to watch the daycare. Defendant asserts that the trial court should have excluded the statements as hearsay and that they were unfairly prejudicial.

¶ 27 Rule 801 of the Utah Rules of Evidence defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible unless it falls under a legally recognized exception. *See* Utah R. Evid. 802. "[I]f an out-of-court statement is 'offered simply to prove that it was made, without regard to whether it is true, such testimony is not proscribed by the hearsay rule.'" *State v. Olsen,* 860 P.2d 332, 335 (Utah 1993) (citation omitted).

¶ 28 In *State v. Carlsen,* a case involving witness tampering, the Utah Supreme Court determined that a statement threatening the victim that he was dead if he testified the next day was not hearsay. *See* 638 P.2d 512, 514 (Utah 1981), *cert. denied,* 455 U.S. 958, 102 S.Ct. 1469, 71 L.Ed.2d 676 (1982). The court reasoned that the statement was not offered to prove that the victim would in fact die if he chose to testify, but rather was offered solely to prove that the defendant had made the statements which were in violation of the statute. *See id.; see also State v. Garcia,* 663 P.2d 60, 65 (Utah 1983) (holding defendant's threat, "I will kill you," was intended to deter bystander from helping police officer and was not hearsay as it was not offered to prove its truth).

¶ 29 In this case, like *Carlsen,* the fact that a threatening statement was made served as the basis for the charged offense. Defendant's statement was not offered to show that he actually intended to carry out the threat or that the threat was "true" in any other sense. These statements were not offered to prove that defendant would in fact try to kill Brimhall if she did not take him back, rather they were offered to prove that they were made. Therefore, the trial court correctly determined that the statements made during the telephone call were not hearsay. Finally, the statements were not unfairly prejudicial as they constituted the substance of the charges against defendant. The State would not have had a case without the statements; therefore, their probative value outweighed any prejudice.

### CONCLUSION

¶ 30 In sum, evidence of defendant's prior disturbance at the victim's residence was properly admitted as evidence of the caller's identity under Rule 404(b) of the Utah Rules of Evidence. Admission of Brimhall's excited utterance identifying the caller as defendant did not violate defendant's right to confront witnesses against him under either federal or state Confrontation Clause. Finally, the caller's threatening statements were not hearsay as they were not offered for the truth of the matter asserted.

¶ 31 Accordingly, we affirm.

¶ 32 WE CONCUR: JUDITH M. BILLINGS, Judge, and GREGORY K. ORME, Judge.